**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America ex rel.** | ) | |
| **JASON STRONG,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07 C 0435** |
| | ) | |
| **DONALD HULICK, Warden,** | ) | |
| **Menard Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jason Strong filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 and also moved to stay the proceedings while he pursues a not-yet-filed second post-conviction petition in state court. Respondent Don Hulick, warden of the Menard Correctional Center, where Strong is incarcerated, has objected to Strong's motion to stay and has asked the Court to dismiss his petition as time-barred pursuant to 28 U.S.C. § 2244(d)(1)(a). For the reasons set forth below, the Court grants Strong's motion to stay for a limited period and declines to dismiss his petition.

### Background

Strong was convicted of first-degree murder in 2001 after a jury trial in the Circuit Court of Lake County and received a prison sentence of forty-six years. The Illinois Appellate Court affirmed his conviction on direct appeal, and the Illinois Supreme Court denied his petition for leave to appeal. An Illinois trial judge dismissed Strong's petition for post-conviction relief as

1

frivolous and patently without merit. The Illinois Appellate Court affirmed the dismissal, and the Illinois Supreme Court denied leave to appeal.

On January 4, 2007, Strong filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the petition, Strong sought relief on several grounds: ineffective assistance of trial counsel, knowing use of false testimony by the prosecution, unfairly prejudicial argument by the prosecution, admission of unfairly prejudicial evidence, admission of a coerced confession, failure to give a lesser included offense instruction, giving of an improper accountability instruction, errors during the voir dire process, and various other errors. Strong simultaneously filed a motion to stay the proceedings in this Court so that he could file a second state post-conviction petition by May 15, 2007 to present new evidence in support of a claim of actual innocence.

In response, Hulick argued that the Court should dismiss Strong's habeas petition as time-barred and deny his motion to stay the proceedings. Strong then filed a reply in which he contended that equitable tolling applied, excusing his late filing. The Court entered an order on April 30, 2007, denying Hulick's request to dismiss Strong's petition based on the record as it then existed, directing Hulick to answer the petition, and reserving judgment on the motion to stay. The Court stated that Hulick had not rebutted Strong's allegations that extraordinary circumstances prevented him from filing his habeas petition in a timely fashion, warranting equitable tolling. The Court warned Strong, however, that Hulick might later develop evidence allowing him again to seek dismissal of the petition as time-barred.

On June 7, 2007, Strong filed an amended habeas petition in which he asserted four additional claims: the prosecution's withholding of favorable evidence in violation of *Brady v.*

*Maryland*, ineffective assistance of trial counsel regarding forensic evidence, the prosecution's use of perjured testimony, and the failure of the police to further investigate important avenues of the case.

In response, Hulick has argued that the Court should dismiss Strong's petition as time-barred or should, in the alternative, deny the petition because his claims are either procedurally defaulted or without merit. Hulick has also urged the Court to deny Strong's motion to stay the proceedings. In his most recent filing on October 2, 2007, Strong did not indicate that he had filed in state court his intended second petition for post-conviction relief.

## Discussion

Federal law imposes a one-year statute of limitations on habeas corpus petitions under section 2254, requiring a prisoner in state custody to file a habeas petition no later than one year after the conclusion of his direct appeal or the expiration of the time for seeking direct review. *See* 28 U.S.C. § 2244(d)(1)(A). If, as Strong argued in his reply to Hulick's first response to Strong's motion to stay, state action "in violation of the Constitution or laws of the United States" creates an "impediment to filing an application," the one-year clock does not begin to run until the impediment is removed, "if the applicant was prevented from filing by such State action." *Id.* § 2244(d)(1)(B). In either case, time is excluded while any "properly filed application for State post-conviction or other collateral review" is pending. *Id.* § 2244(d)(2).

The Illinois Supreme Court denied Strong's petition for leave to appeal his conviction on February 5, 2003. The time during which he could have petitioned the United States Supreme Court for a writ of certiorari expired on May 6, 2003. On that date, Hulick contends, the clock began to run on the one-year statute of limitations. On July 18, 2003, seventy-three days later,

Strong filed a petition for post-conviction relief in state court, thereby tolling the statute of limitations.

The post-conviction proceedings concluded on January 25, 2006, at which time, Hulick argues, the clock began to run again. For purposes of the habeas corpus statute of limitations, when (as in this case) the petitioner has not petitioned for certiorari in connection with his post-conviction petition, post-conviction proceedings conclude on the date the Illinois Supreme Court denies leave to appeal. *See Smith v. Walls*, 276 F.3d 340, 345 (7th Cir. 2002). Strong did not file a petition for certiorari, so the clock began to run upon the Illinois Supreme Court's disposition of the case. *See, e.g., Gildon v. Bowen*, 384 F.3d 883, 885–86 (7th Cir. 2004).

According to Hulick, because seventy-three days elapsed between the conclusion of proceedings on denial of appeal and Strong's filing of the post-conviction petition, Strong's habeas petition was due on November 13, 2006, 292 days after the state post-conviction proceedings ended. Strong did not mail his petition to the Court until January 4, 2007, 344 days later.[1] When those 344 days are added to the seventy-three days already accrued, the total is 417 days. In other words, Hulick argues, Strong's petition was filed fifty-two days late.

Strong argues that he is entitled to equitable tolling of the limitations period and that his petition should therefore not be dismissed as time-barred. Under the doctrine of equitable tolling, the Court may toll the limitations period if a petitioner establishes that "extraordinary circumstances outside of the petitioner's control prevent timely filing of the habeas petition." *Gildon*, 384 F.3d at 887. *See also Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (equitable

---

[1] Although Strong's petition was not received by the court clerk until January 23, 2007, it is deemed to have been filed on the day he gave it to prison authorities to mail. *See Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999).

4

tolling "excuses an untimely filing when, despite exercising reasonable diligence, a petitioner could not have learned the information he needed in order to file on time"). The Supreme Court has not yet decided whether section 2244(d) permits equitable tolling but has stated that if it does, a petitioner must "show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)).

The circumstances that Strong cites also give rise to the question of whether the one-year statute of limitations ever started to run, or at a minimum whether it started to run early enough for the clock to run out before he filed his petition with this Court. Specifically, Strong's argument suggests the existence of a state-created impediment that, under section 2244(d)(1)(B) or the doctrine of equitable estoppel, may have prevented the clock from starting to run until well under a year before Strong filed his habeas corpus petition.

Strong admits he was aware there was a one year deadline for filing a habeas corpus petition, a topic to which the Court will return momentarily. He did not know, however, that the time that passed between the final disposition of his direct appeal and the filing of his post-conviction petition counted against the one-year deadline. The attorney who handled Strong's direct appeal told him that he had to exhaust state-court remedies before filing a federal habeas corpus petition but did not tell him how the one-year limitations period was calculated. Reply to Response to Motion to Stay (docket no. 11) at 2-3. As a result, Strong incorrectly believed that he had one year from the conclusion of proceedings on his direct appeal. This is a very common misconception on the part of Illinois prisoners – one that, unfortunately, defense attorneys handling direct appeals often do not clear up when advising clients of their options after the

appeal is concluded.

Without more, neither Strong's misunderstanding of the law nor his counsel's failure to explain it would entitle him to equitable tolling of the habeas corpus statute of limitations. The Seventh Circuit has consistently held that neither ignorance of the law nor bad (or incomplete) advice from counsel permits tolling. *See, e.g., Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling."); *Modrowski v. Mote*, 322 F.3d 965, 968-69 (7th Cir. 2003) (attorney negligence is not ground for equitable tolling). And, of course, neither a prisoner's misunderstanding nor his lawyer's missteps constitute a state-created impediment to filing that would qualify under section 2244(d)(1)(B).

In Strong's case, however, there is more. Specifically, the evidence reflects that Strong was prevented, until it was too late, from learning how the habeas corpus statute of limitations works, due to a combination of prison-imposed restrictions on access to the Menard law library. This evidence is sufficient to establish that there was a state-created impediment that prevented Strong from filing a timely habeas corpus petition, or at least that Strong is entitled to equitable tolling of the statute of limitations.

Strong says, and Hulick does not deny, that a prison law clerk told Strong that "he had a year to file." Reply to Answer at 6. Strong has not related this conversation with precision. In particular, he does not say what the clerk stated regarding when the one year period started to run. Taking the statement in context, however, it is reasonable to infer that the law clerk told Strong he had one year after his post-conviction appeal was concluded to file a federal habeas corpus petition. As the Court has indicated, this was incorrect advice.

As indicated earlier, a prisoner's receipt of bad advice ordinarily does not give rise to a viable claim of equitable tolling, let alone a claim of a state-created impediment to filing. As the Court has stated, if a prisoner's attorney gives him bad advice, he is out of luck. The difference here, however, is that the advice came from a person who – based on reasonable inferences from the evidence – acted pursuant to authority conferred upon him by the state.[2] And, as the Court is about to discuss, prison staff rationed access to the law library based upon their understanding – or in Strong's case, their misunderstanding – of the particular prisoner's filing deadline. In short, Strong's perception of his filing deadline was created or at least significantly influenced by personnel who, albeit unwittingly, had the ability to prevent him from learning the truth.

Access to the Menard prison law library is strictly controlled. First, it is undisputed prisoners have no direct access to the library when the prison is on lockdown. Menard was on lockdown during a significant portion of the year that Strong had to prepare his habeas corpus petition. Hulick has provided an affidavit from Julie Potts, the litigation coordinator at Menard, listing all of the prison's lockdowns during 2006. Answer, Ex. O. In 2006, the prison was on lockdown for fourteen days in January, nine days in February, sixteen days in April, and eight days in May. There was a "level one" lockdown from June 2 through June 11, a "level four" lockdown" from June 12 through July 19, another level one lockdown from July 21 through August 9, and another level four lockdown from August 10 through September 13. The prison was off lockdown from then until November 11, when it went on level one lockdown through

_____

[2] It is unclear from the record whether prison law clerks are prison employees or, instead, are prisoners who work in or for the law library. Either way, however, the law clerk's position, and thus his influence and/or authority, were state-conferred. Any impediment or restriction imposed as a result of the actions of such a person was, therefore, state-created.

November 13, which was Strong's deadline for filing his habeas corpus petition if the limitations period is calculated as Hulick argues. In short, due to lockdowns, Strong had no access to the law library for fifteen of the twenty-three weeks immediately preceding November 13, 2006, his filing deadline according to Hulick.

Hulick has submitted prison regulations establishing that during level one lockdowns, "[l]aw library staff shall review known verifiable court, statutory, and statute of limitations deadlines" and then "shall contact offenders with known imminent deadlines and shall provide limited law library services to those offenders at their cells, including, but not limited to, provision of forms such as extensions of time, envelopes, and notary services." Answer, Ex. O, IDOC Admin. Dir. 05.01.301 ¶ II.G.1.j. During level four lockdowns, the level one procedures apply, but in addition, "[l]aw library services shall be provided to offenders with verifiable court, statutory, or statute of limitations deadlines. These services shall be provided at the cell or with the approval of the respective Deputy Director at the satellite law library, where applicable." *Id.* ¶ II.G.2.e (describing "level two" procedures, which are incorporated in the level four procedures via *id.* ¶ II.G.4).

Hulick has not provided information explaining the terminology in the lockdown regulations or how they work in practice. The Court can, nonetheless, draw some conclusions from the regulations' language. First, the regulations' references to "verifiable" deadlines and "known imminent deadlines" strongly indicate that prison staff have a role in figuring out what court filing deadline exists for a given prisoner. This tends to corroborate Strong's statement that a prison law clerk told him that he had a year to file. Second, even if information on "known" or "verifiable" deadlines comes from the prisoner himself, the library access

restrictions created a Catch-22 for Strong: he had been given bad information about how the habeas corpus statute of limitations worked and thus did not believe his deadline was "imminent," but for that reason he could not get access (at least during lockdowns) to material that might have allowed him to learn of the error.

One way or another, Strong says, and Hulick does not dispute, that he was not considered to fall within the category of prisoners with "imminent" deadlines. *See* Reply to Response to Motion to Stay at 5; Reply to Answer at 7. Thus, Strong had no access at all to law library materials during lockdown periods. He was, as a result, unable to determine for himself during those periods how the statute of limitations worked.

Based on Potts' listing of the lockdown periods during 2006, lockdowns would not have barred Strong from access to the library between September 13, 2006 and November 11, 2006, a period of about eight weeks. That does not mean, however, that Strong actually had access to the library during that period. Prisoners' access to the library was also highly restricted during non-lockdown periods. First, Strong says, and Hulick does not dispute, that when a lockdown is lifted, "there is a period of at least 30-days with a backlog of prisoners with immediate deadlines (who could not attend due to lockdown) who supercede [sic] anyone else." Reply to Answer at 7. This practice would have prevented Strong from gaining access to the library during the non-lockdown period from September 13 through mid-October 2006, a period of about four weeks.

Strong also asserts, and Hulick does not dispute, that when the prison is not on lockdown, "[i]nmates with a deadline will be allowed one day a week in the law library when they have 60-90 days to deadline, and two days a week if less than 60 days." Reply to Answer at 6. Strong says he did not fall within either of these deadline categories when the prison was off lockdown

during the period when his one-year limitations period was running. *Id.* Specifically, Strong says, he "was unable to gain access to the law library" even during non-lockdown periods, because people perceived to have shorter deadlines took priority. *Id.*

Based on the record before the Court, it is reasonable to infer, and the Court does infer, that Strong was unable to access the law library during the relevant period because prison staff, or persons deriving their authority from prison staff, did not consider him to have an imminent filing deadline. The Court acknowledges Hulick's argument that Strong could have been the source, or at least a source, of this misunderstanding. The evidence supports, however, a reasonable inference that the error was made by prison personnel who controlled access to the law library. In any event, as noted earlier, Strong was unable to gain access to library materials that would have enabled him to learn the correct deadline, because of the aforementioned rules that gave library access only to those considered to have imminent deadlines.

In sum, Strong has provided evidence sufficient to show that he was prevented from having access to material from the prison law library that would have allowed him to learn the how the habeas corpus statute of limitations works. The Seventh Circuit has suggested that a prisoner must have access to the habeas corpus statute of limitations before it may be used to bar his claim. In *Moore v. Battaglia*, 476 F.3d 504 (7th Cir. 2007), the petitioner contended that the books in the prison library were "'real old,' irrelevant to his needs, and that the law [had] changed from that available in the library." *Id.* at 508. The court remanded the case to the district court to determine whether the prison library had a copy of the statute of limitations that the petitioner was not prevented from accessing, in which case "there would be no need to reach the further legal question regarding tolling." *Id.* Though the court did not say what the result

would be if the library had not contained a copy of the relevant statute of limitations, it suggested that such a state of affairs might constitute a state-created impediment to filing a habeas corpus petition that would, under section 2244(d)(1)(B), prevent the statute of limitations from running. *Id.* at 507-08.

The Fifth Circuit has held that a state's failure to provide "a copy of the very statute that [was] being used to render [the petitioner's] petition time-barred, constitutes an 'impediment' for purposes of invoking § 2244(d)(1)(B)." *Egerton v. Cockrell*, 334 F.3d 433, 438–39 (5th Cir. 2003). Because the petitioner had no access to a copy of AEDPA until after the statute of limitations had run, the court concluded that the statute of limitations did not start to run until the state-imposed impediment was lifted, when the petitioner was transferred to a facility where the statute of limitations was available. *Id.* at 439. The court distinguished *Egerton* from a previous decision in which the petitioner had filed his late petition "prior to obtaining a copy of the AEDPA." *Id.* at 437 (citing *Felder v. Johnson*, 204 F.3d 158, 171 n.9 (5th Cir. 2000)). The court in *Felder* rejected the petitioner's contention that the inadequacies of the law library were responsible for his late filing because nothing about his circumstances changed before he ultimately filed the petition. *Felder*, 204 F.3d at 172–73. In *Egerton*, on the other hand, the court found that the fact that the petitioner was able to file his petition only after receiving access to an adequate law library containing the statute of limitations demonstrated that the absence of the statute before his transfer constituted a state-created impediment. *Egerton*, 334 F.3d at 437.

This Court finds the Fifth Circuit's reasoning in *Egerton* persuasive. Though Strong has not specifically alleged that the Menard library did not contain a copy of AEDPA's statute of limitations, he has alleged that he "didn't have access to the rules." Because of the Menard

11

prison's system for apportioning library time to its inmates, Strong had no access to the statute of limitations Hulick seeks to use to render his petition time-barred until at or after the date Hulick contends the clock ran out.

The Court notes that in *Moore*, the Seventh Circuit, when remanding the case to the district court, noted that to avoid equitable tolling, the respondent had to show not only that the prison law library had a copy of the statute of limitations, but that the prisoner was not prevented from accessing it. *See Moore*, 476 F.3d at 508. Hulick has not provided this kind of evidence here. Even if the statute of limitations was in the Menard library, Strong was effectively prevented from accessing it during any period in which it might have helped him.

Section 2244(d)(1)(B) requires that state action preventing an applicant from filing his petition violate the Constitution or laws of the United States to prevent the statute of limitations from running. In a case where inmates on lockdown alleged that state prison officials violated their constitutional right of access to the courts by delaying the prisoners' receipt of legal materials and legal assistance for as long as sixteen days, the Supreme Court stated that such delays "are not of constitutional significance, even where they result in actual injury" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis v. Casey*, 518 U.S. 343, 362 (1996). In *Lewis*, however, the inmates on lockdown included those considered the most violent and those with unique disciplinary and security concerns. *Id.* at 361.

Here, on the other hand, Strong's inability to access legal materials for nearly the last six months leading up to the deadline date that Hulick urges resulted not only from the prison's library access restrictions, but from the interplay between these restrictions and the

12

misinformation Strong was given.  Furthermore, the Seventh Circuit has stated that in the habeas corpus context, due process "might be . . . broadly construed to forbid" all impediments created by state action.  *Williams v. Sims*, 390 F.3d 958, 960 (7th Cir. 2004).  Even if it is not so construed, the doctrine of equitable estoppel may still fill in the gap left by the statute.[3]  *See id.* at 962 (collecting cases in which courts relied on equitable estoppel to bar respondents from pleading the statute of limitations as an affirmative defense, and stating that "[t]he validity of such decisions should not depend on whether they can be shoehorned into the statutory provision for impediment[s] to filing an application created by State action in violation of the Constitution or laws of the United States").  The miscalculation of the due date for Strong's habeas petition by prison personnel and the resulting inaccessibility to Strong of the statute of limitations qualifies as state action impeding Strong from timely filing his petition within the meaning of section 2244(d)(1)(B) and/or the doctrine of equitable estoppel and/or tolling.

For equitable tolling to apply, Strong must also demonstrate that he exercised reasonable diligence in attempting to file his petition.  *See Pace*, 544 U.S. at 418.  Although it is unclear whether this factor is required in applying equitable estoppel, the Court will address it out of an abundance of caution.  In arguing that Strong failed to act with due diligence, Hulick points out that Strong did not file his petition for fifty-two days after the lockdown leading up to the true deadline ended and that during that time he was subject to only one additional day of lockdown.  Furthermore, Hulick notes, there were numerous lockdown-free days at Menard before the long summer lockdown of 2006.  However, Hulick's argument fails to take into account Menard's regular library restrictions.  Lockdown or no lockdown, Strong could not access the library at all

_____

[3]  The doctrine of equitable estoppel "addresses conduct by the defendant that prevents the plaintiff from suing within the statutory period."  *Williams*, 390 F.3d at 959.

until ninety days before his deadline, so the lockdown-free days prior to the summer of 2006 did not afford Strong any library time. Moreover, Strong's filing of his petition on January 4, 2007, only sixty-nine days after Menard library protocol first would have allowed him library access and twenty-one days before he believed his petition was due, demonstrates that he was, in fact, diligent in preparing his petition.[4] Strong is not on death row and as such, his interests are not served by anything other than diligence, which he has sufficiently demonstrated to the Court.

For these reasons, under either § 2244(d)(1)(B) or principles of equitable estoppel or tolling, Strong's petition is not time-barred.

### Motion to Stay

The Court's order of April 30, 2007 stated that if Strong were to file an amendment to his petition, adding federal constitutional claims arising from the new evidence he said he had obtained, the Court would be required to stay his petition until he had exhausted state court remedies on his new claims. Because Strong has now done so, the Court will stay further proceedings.

Federal district courts may not adjudicate mixed petitions for habeas corpus containing both unexhausted and exhausted claims. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). For many years, federal courts dismissed such petitions without prejudice under *Rose*, but the introduction of the one-year statute of limitations under AEDPA made such dismissals effectively final. *See Rhines v. Weber*, 544 U.S. 269, 275 (2005). Because the filing of a federal habeas petition does not toll the statute of limitations, *Duncan v. Walker*,

---

[4] Strong's statement that even if he had known the statute of limitations, lockdowns and mail delays would have prevented him from filing his petition on time does not bolster Hulick's case; the fact that additional prison conditions made filing Strong's petition in a timely fashion even less possible only strengthens Strong's argument.

533 U.S. 167, 181–82 (2001), a petitioner returning to state court to pursue unexhausted claims contained in a mixed petition is unlikely to be able to do so and return to federal court before the statute of limitations runs. *See Rhines*, 544 U.S. at 275.

Furthermore, the barriers to filing a second habeas corpus petition, which requires advance approval from the Seventh Circuit, are high. *See* 28 U.S.C. § 2244(b)(2) (a claim in a successive habeas application under § 2254 will be dismissed unless it "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or . . . the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and . . . the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense").

Under certain circumstances, a federal district court "has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Rhines,* 544 U.S. at 271–72. In fact, it may be considered an abuse of discretion for a district court to refuse to grant a stay "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

Strong appears to have had good cause for his failure to exhaust. In his amended habeas petition, Strong contends that he failed to exhaust his new claims because they are based on new evidence generated from investigations conducted within the past year or so. Motion for Leave to File an Amended Petition (docket no. 13) at 6. Among other things, the police did not

discover the identity of the victim in Strong's case until February 2006. Although Strong has not clearly articulated the link between this new information and the constitutional claims he believes arise from it, to the extent the amended claims are based on this new evidence, he should have a reasonable opportunity to pursue them in state court before the Court decides his amended habeas petition. Furthermore, Strong's claims are not clearly meritless, and there is no indication that he is bringing them to delay litigation intentionally. As discussed earlier, the strictly limited library access at Menard, the prison's frequent, prolonged lockdowns, and the extended mail delays have all slowed his progress.

The Court will not stay proceedings on Strong's petition indefinitely, however. The Supreme Court has advised that a district court should "place reasonable time limits on a petitioner's trip to state court and back." *Rhines*, 544 U.S. at 278. Unless Strong files his intended petition for post-conviction relief in state court within sixty days after the entry of this order, the Court will lift the stay. If Strong files the intended petition in a timely fashion but fails to prosecute it diligently, the Court reserves the right to lift the stay in the future.

### CONCLUSION

For the foregoing reasons, the Court grants Strong's motion to stay habeas proceedings for a limited time [docket no. 3] and declines to dismiss his petition. Both parties are directed to file written status reports by no later than March 31, 2008, stating whether Strong has filed a petition for post-conviction relief in state court, and if so, identifying the petition by its docket number.

MATTHEW F. KENNELLY
United States District Judge

Date: January 18, 2008

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America ex rel.** | ) | |
| **JASON STRONG,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07 C 0435** |
| | ) | |
| **DONALD HULICK, Warden,** | ) | |
| **Menard Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

     Jason Strong filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 and also

moved to stay the proceedings while he pursues a not-yet-filed second post-conviction petition in

state court. Respondent Don Hulick, warden of the Menard Correctional Center, where Strong is

incarcerated, has objected to Strong's motion to stay and has asked the Court to dismiss his

petition as time-barred pursuant to 28 U.S.C. § 2244(d)(1)(a). For the reasons set forth below,

the Court grants Strong's motion to stay for a limited period and declines to dismiss his petition.

### Background

     Strong was convicted of first-degree murder in 2001 after a jury trial in the Circuit Court

of Lake County and received a prison sentence of forty-six years. The Illinois Appellate Court

affirmed his conviction on direct appeal, and the Illinois Supreme Court denied his petition for

leave to appeal. An Illinois trial judge dismissed Strong's petition for post-conviction relief as

1

frivolous and patently without merit. The Illinois Appellate Court affirmed the dismissal, and the Illinois Supreme Court denied leave to appeal.

On January 4, 2007, Strong filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the petition, Strong sought relief on several grounds: ineffective assistance of trial counsel, knowing use of false testimony by the prosecution, unfairly prejudicial argument by the prosecution, admission of unfairly prejudicial evidence, admission of a coerced confession, failure to give a lesser included offense instruction, giving of an improper accountability instruction, errors during the voir dire process, and various other errors. Strong simultaneously filed a motion to stay the proceedings in this Court so that he could file a second state post-conviction petition by May 15, 2007 to present new evidence in support of a claim of actual innocence.

In response, Hulick argued that the Court should dismiss Strong's habeas petition as time-barred and deny his motion to stay the proceedings. Strong then filed a reply in which he contended that equitable tolling applied, excusing his late filing. The Court entered an order on April 30, 2007, denying Hulick's request to dismiss Strong's petition based on the record as it then existed, directing Hulick to answer the petition, and reserving judgment on the motion to stay. The Court stated that Hulick had not rebutted Strong's allegations that extraordinary circumstances prevented him from filing his habeas petition in a timely fashion, warranting equitable tolling. The Court warned Strong, however, that Hulick might later develop evidence allowing him again to seek dismissal of the petition as time-barred.

On June 7, 2007, Strong filed an amended habeas petition in which he asserted four additional claims: the prosecution's withholding of favorable evidence in violation of *Brady v.*

*Maryland*, ineffective assistance of trial counsel regarding forensic evidence, the prosecution's use of perjured testimony, and the failure of the police to further investigate important avenues of the case.

In response, Hulick has argued that the Court should dismiss Strong's petition as time-barred or should, in the alternative, deny the petition because his claims are either procedurally defaulted or without merit. Hulick has also urged the Court to deny Strong's motion to stay the proceedings. In his most recent filing on October 2, 2007, Strong did not indicate that he had filed in state court his intended second petition for post-conviction relief.

**Discussion**

Federal law imposes a one-year statute of limitations on habeas corpus petitions under section 2254, requiring a prisoner in state custody to file a habeas petition no later than one year after the conclusion of his direct appeal or the expiration of the time for seeking direct review. *See* 28 U.S.C. § 2244(d)(1)(A). If, as Strong argued in his reply to Hulick's first response to Strong's motion to stay, state action "in violation of the Constitution or laws of the United States" creates an "impediment to filing an application," the one-year clock does not begin to run until the impediment is removed, "if the applicant was prevented from filing by such State action." *Id.* § 2244(d)(1)(B). In either case, time is excluded while any "properly filed application for State post-conviction or other collateral review" is pending. *Id.* § 2244(d)(2).

The Illinois Supreme Court denied Strong's petition for leave to appeal his conviction on February 5, 2003. The time during which he could have petitioned the United States Supreme Court for a writ of certiorari expired on May 6, 2003. On that date, Hulick contends, the clock began to run on the one-year statute of limitations. On July 18, 2003, seventy-three days later,

Strong filed a petition for post-conviction relief in state court, thereby tolling the statute of limitations.

The post-conviction proceedings concluded on January 25, 2006, at which time, Hulick argues, the clock began to run again. For purposes of the habeas corpus statute of limitations, when (as in this case) the petitioner has not petitioned for certiorari in connection with his post-conviction petition, post-conviction proceedings conclude on the date the Illinois Supreme Court denies leave to appeal. *See Smith v. Walls*, 276 F.3d 340, 345 (7th Cir. 2002). Strong did not file a petition for certiorari, so the clock began to run upon the Illinois Supreme Court's disposition of the case. *See, e.g., Gildon v. Bowen*, 384 F.3d 883, 885–86 (7th Cir. 2004).

According to Hulick, because seventy-three days elapsed between the conclusion of proceedings on denial of appeal and Strong's filing of the post-conviction petition, Strong's habeas petition was due on November 13, 2006, 292 days after the state post-conviction proceedings ended. Strong did not mail his petition to the Court until January 4, 2007, 344 days later.[1] When those 344 days are added to the seventy-three days already accrued, the total is 417 days. In other words, Hulick argues, Strong's petition was filed fifty-two days late.

Strong argues that he is entitled to equitable tolling of the limitations period and that his petition should therefore not be dismissed as time-barred. Under the doctrine of equitable tolling, the Court may toll the limitations period if a petitioner establishes that "extraordinary circumstances outside of the petitioner's control prevent timely filing of the habeas petition." *Gildon*, 384 F.3d at 887. *See also Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (equitable

---

[1] Although Strong's petition was not received by the court clerk until January 23, 2007, it is deemed to have been filed on the day he gave it to prison authorities to mail. *See Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999).

4

tolling "excuses an untimely filing when, despite exercising reasonable diligence, a petitioner could not have learned the information he needed in order to file on time"). The Supreme Court has not yet decided whether section 2244(d) permits equitable tolling but has stated that if it does, a petitioner must "show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)).

The circumstances that Strong cites also give rise to the question of whether the one-year statute of limitations ever started to run, or at a minimum whether it started to run early enough for the clock to run out before he filed his petition with this Court. Specifically, Strong's argument suggests the existence of a state-created impediment that, under section 2244(d)(1)(B) or the doctrine of equitable estoppel, may have prevented the clock from starting to run until well under a year before Strong filed his habeas corpus petition.

Strong admits he was aware there was a one year deadline for filing a habeas corpus petition, a topic to which the Court will return momentarily. He did not know, however, that the time that passed between the final disposition of his direct appeal and the filing of his post-conviction petition counted against the one-year deadline. The attorney who handled Strong's direct appeal told him that he had to exhaust state-court remedies before filing a federal habeas corpus petition but did not tell him how the one-year limitations period was calculated. Reply to Response to Motion to Stay (docket no. 11) at 2-3. As a result, Strong incorrectly believed that he had one year from the conclusion of proceedings on his direct appeal. This is a very common misconception on the part of Illinois prisoners – one that, unfortunately, defense attorneys handling direct appeals often do not clear up when advising clients of their options after the

appeal is concluded.

Without more, neither Strong's misunderstanding of the law nor his counsel's failure to explain it would entitle him to equitable tolling of the habeas corpus statute of limitations. The Seventh Circuit has consistently held that neither ignorance of the law nor bad (or incomplete) advice from counsel permits tolling. *See, e.g., Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling."); *Modrowski v. Mote*, 322 F.3d 965, 968-69 (7th Cir. 2003) (attorney negligence is not ground for equitable tolling). And, of course, neither a prisoner's misunderstanding nor his lawyer's missteps constitute a state-created impediment to filing that would qualify under section 2244(d)(1)(B).

In Strong's case, however, there is more. Specifically, the evidence reflects that Strong was prevented, until it was too late, from learning how the habeas corpus statute of limitations works, due to a combination of prison-imposed restrictions on access to the Menard law library. This evidence is sufficient to establish that there was a state-created impediment that prevented Strong from filing a timely habeas corpus petition, or at least that Strong is entitled to equitable tolling of the statute of limitations.

Strong says, and Hulick does not deny, that a prison law clerk told Strong that "he had a year to file." Reply to Answer at 6. Strong has not related this conversation with precision. In particular, he does not say what the clerk stated regarding when the one year period started to run. Taking the statement in context, however, it is reasonable to infer that the law clerk told Strong he had one year after his post-conviction appeal was concluded to file a federal habeas corpus petition. As the Court has indicated, this was incorrect advice.

As indicated earlier, a prisoner's receipt of bad advice ordinarily does not give rise to a viable claim of equitable tolling, let alone a claim of a state-created impediment to filing. As the Court has stated, if a prisoner's attorney gives him bad advice, he is out of luck. The difference here, however, is that the advice came from a person who – based on reasonable inferences from the evidence – acted pursuant to authority conferred upon him by the state.[2] And, as the Court is about to discuss, prison staff rationed access to the law library based upon their understanding – or in Strong's case, their misunderstanding – of the particular prisoner's filing deadline. In short, Strong's perception of his filing deadline was created or at least significantly influenced by personnel who, albeit unwittingly, had the ability to prevent him from learning the truth.

Access to the Menard prison law library is strictly controlled. First, it is undisputed prisoners have no direct access to the library when the prison is on lockdown. Menard was on lockdown during a significant portion of the year that Strong had to prepare his habeas corpus petition. Hulick has provided an affidavit from Julie Potts, the litigation coordinator at Menard, listing all of the prison's lockdowns during 2006. Answer, Ex. O. In 2006, the prison was on lockdown for fourteen days in January, nine days in February, sixteen days in April, and eight days in May. There was a "level one" lockdown from June 2 through June 11, a "level four" lockdown" from June 12 through July 19, another level one lockdown from July 21 through August 9, and another level four lockdown from August 10 through September 13. The prison was off lockdown from then until November 11, when it went on level one lockdown through

---

[2] It is unclear from the record whether prison law clerks are prison employees or, instead, are prisoners who work in or for the law library. Either way, however, the law clerk's position, and thus his influence and/or authority, were state-conferred. Any impediment or restriction imposed as a result of the actions of such a person was, therefore, state-created.

November 13, which was Strong's deadline for filing his habeas corpus petition if the limitations period is calculated as Hulick argues. In short, due to lockdowns, Strong had no access to the law library for fifteen of the twenty-three weeks immediately preceding November 13, 2006, his filing deadline according to Hulick.

Hulick has submitted prison regulations establishing that during level one lockdowns, "[l]aw library staff shall review known verifiable court, statutory, and statute of limitations deadlines" and then "shall contact offenders with known imminent deadlines and shall provide limited law library services to those offenders at their cells, including, but not limited to, provision of forms such as extensions of time, envelopes, and notary services." Answer, Ex. O, IDOC Admin. Dir. 05.01.301 ¶ II.G.1.j. During level four lockdowns, the level one procedures apply, but in addition, "[l]aw library services shall be provided to offenders with verifiable court, statutory, or statute of limitations deadlines. These services shall be provided at the cell or with the approval of the respective Deputy Director at the satellite law library, where applicable." *Id.* ¶ II.G.2.e (describing "level two" procedures, which are incorporated in the level four procedures via *id.* ¶ II.G.4).

Hulick has not provided information explaining the terminology in the lockdown regulations or how they work in practice. The Court can, nonetheless, draw some conclusions from the regulations' language. First, the regulations' references to "verifiable" deadlines and "known imminent deadlines" strongly indicate that prison staff have a role in figuring out what court filing deadline exists for a given prisoner. This tends to corroborate Strong's statement that a prison law clerk told him that he had a year to file. Second, even if information on "known" or "verifiable" deadlines comes from the prisoner himself, the library access

8

restrictions created a Catch-22 for Strong: he had been given bad information about how the habeas corpus statute of limitations worked and thus did not believe his deadline was "imminent," but for that reason he could not get access (at least during lockdowns) to material that might have allowed him to learn of the error.

One way or another, Strong says, and Hulick does not dispute, that he was not considered to fall within the category of prisoners with "imminent" deadlines. *See* Reply to Response to Motion to Stay at 5; Reply to Answer at 7. Thus, Strong had no access at all to law library materials during lockdown periods. He was, as a result, unable to determine for himself during those periods how the statute of limitations worked.

Based on Potts' listing of the lockdown periods during 2006, lockdowns would not have barred Strong from access to the library between September 13, 2006 and November 11, 2006, a period of about eight weeks. That does not mean, however, that Strong actually had access to the library during that period. Prisoners' access to the library was also highly restricted during non-lockdown periods. First, Strong says, and Hulick does not dispute, that when a lockdown is lifted, "there is a period of at least 30-days with a backlog of prisoners with immediate deadlines (who could not attend due to lockdown) who supercede [sic] anyone else." Reply to Answer at 7. This practice would have prevented Strong from gaining access to the library during the non-lockdown period from September 13 through mid-October 2006, a period of about four weeks.

Strong also asserts, and Hulick does not dispute, that when the prison is not on lockdown, "[i]nmates with a deadline will be allowed one day a week in the law library when they have 60-90 days to deadline, and two days a week if less than 60 days." Reply to Answer at 6. Strong says he did not fall within either of these deadline categories when the prison was off lockdown

during the period when his one-year limitations period was running. *Id.* Specifically, Strong says, he "was unable to gain access to the law library" even during non-lockdown periods, because people perceived to have shorter deadlines took priority. *Id.*

Based on the record before the Court, it is reasonable to infer, and the Court does infer, that Strong was unable to access the law library during the relevant period because prison staff, or persons deriving their authority from prison staff, did not consider him to have an imminent filing deadline. The Court acknowledges Hulick's argument that Strong could have been the source, or at least a source, of this misunderstanding. The evidence supports, however, a reasonable inference that the error was made by prison personnel who controlled access to the law library. In any event, as noted earlier, Strong was unable to gain access to library materials that would have enabled him to learn the correct deadline, because of the aforementioned rules that gave library access only to those considered to have imminent deadlines.

In sum, Strong has provided evidence sufficient to show that he was prevented from having access to material from the prison law library that would have allowed him to learn the how the habeas corpus statute of limitations works. The Seventh Circuit has suggested that a prisoner must have access to the habeas corpus statute of limitations before it may be used to bar his claim. In *Moore v. Battaglia*, 476 F.3d 504 (7th Cir. 2007), the petitioner contended that the books in the prison library were "'real old,' irrelevant to his needs, and that the law [had] changed from that available in the library." *Id.* at 508. The court remanded the case to the district court to determine whether the prison library had a copy of the statute of limitations that the petitioner was not prevented from accessing, in which case "there would be no need to reach the further legal question regarding tolling." *Id.* Though the court did not say what the result

would be if the library had not contained a copy of the relevant statute of limitations, it suggested that such a state of affairs might constitute a state-created impediment to filing a habeas corpus petition that would, under section 2244(d)(1)(B), prevent the statute of limitations from running. *Id.* at 507-08.

The Fifth Circuit has held that a state's failure to provide "a copy of the very statute that [was] being used to render [the petitioner's] petition time-barred, constitutes an 'impediment' for purposes of invoking § 2244(d)(1)(B)." *Egerton v . Cockrell*, 334 F.3d 433, 438–39 (5th Cir. 2003). Because the petitioner had no access to a copy of AEDPA until after the statute of limitations had run, the court concluded that the statute of limitations did not start to run until the state-imposed impediment was lifted, when the petitioner was transferred to a facility where the statute of limitations was available. *Id.* at 439. The court distinguished *Egerton* from a previous decision in which the petitioner had filed his late petition "prior to obtaining a copy of the AEDPA." *Id.* at 437 (citing *Felder v. Johnson*, 204 F.3d 158, 171 n.9 (5th Cir. 2000)). The court in *Felder* rejected the petitioner's contention that the inadequacies of the law library were responsible for his late filing because nothing about his circumstances changed before he ultimately filed the petition. *Felder*, 204 F.3d at 172–73. In *Egerton*, on the other hand, the court found that the fact that the petitioner was able to file his petition only after receiving access to an adequate law library containing the statute of limitations demonstrated that the absence of the statute before his transfer constituted a state-created impediment. *Egerton*, 334 F.3d at 437.

This Court finds the Fifth Circuit's reasoning in *Egerton* persuasive. Though Strong has not specifically alleged that the Menard library did not contain a copy of AEDPA's statute of limitations, he has alleged that he "didn't have access to the rules." Because of the Menard

prison's system for apportioning library time to its inmates, Strong had no access to the statute of limitations Hulick seeks to use to render his petition time-barred until at or after the date Hulick contends the clock ran out.

The Court notes that in *Moore*, the Seventh Circuit, when remanding the case to the district court, noted that to avoid equitable tolling, the respondent had to show not only that the prison law library had a copy of the statute of limitations, but that the prisoner was not prevented from accessing it. *See Moore*, 476 F.3d at 508. Hulick has not provided this kind of evidence here. Even if the statute of limitations was in the Menard library, Strong was effectively prevented from accessing it during any period in which it might have helped him.

Section 2244(d)(1)(B) requires that state action preventing an applicant from filing his petition violate the Constitution or laws of the United States to prevent the statute of limitations from running. In a case where inmates on lockdown alleged that state prison officials violated their constitutional right of access to the courts by delaying the prisoners' receipt of legal materials and legal assistance for as long as sixteen days, the Supreme Court stated that such delays "are not of constitutional significance, even where they result in actual injury" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis v. Casey*, 518 U.S. 343, 362 (1996). In *Lewis*, however, the inmates on lockdown included those considered the most violent and those with unique disciplinary and security concerns. *Id.* at 361.

Here, on the other hand, Strong's inability to access legal materials for nearly the last six months leading up to the deadline date that Hulick urges resulted not only from the prison's library access restrictions, but from the interplay between these restrictions and the

misinformation Strong was given. Furthermore, the Seventh Circuit has stated that in the habeas corpus context, due process "might be . . . broadly construed to forbid" all impediments created by state action. *Williams v. Sims*, 390 F.3d 958, 960 (7th Cir. 2004). Even if it is not so construed, the doctrine of equitable estoppel may still fill in the gap left by the statute.[3] *See id.* at 962 (collecting cases in which courts relied on equitable estoppel to bar respondents from pleading the statute of limitations as an affirmative defense, and stating that "[t]he validity of such decisions should not depend on whether they can be shoehorned into the statutory provision for impediment[s] to filing an application created by State action in violation of the Constitution or laws of the United States"). The miscalculation of the due date for Strong's habeas petition by prison personnel and the resulting inaccessibility to Strong of the statute of limitations qualifies as state action impeding Strong from timely filing his petition within the meaning of section 2244(d)(1)(B) and/or the doctrine of equitable estoppel and/or tolling.

For equitable tolling to apply, Strong must also demonstrate that he exercised reasonable diligence in attempting to file his petition. *See Pace*, 544 U.S. at 418. Although it is unclear whether this factor is required in applying equitable estoppel, the Court will address it out of an abundance of caution. In arguing that Strong failed to act with due diligence, Hulick points out that Strong did not file his petition for fifty-two days after the lockdown leading up to the true deadline ended and that during that time he was subject to only one additional day of lockdown. Furthermore, Hulick notes, there were numerous lockdown-free days at Menard before the long summer lockdown of 2006. However, Hulick's argument fails to take into account Menard's regular library restrictions. Lockdown or no lockdown, Strong could not access the library at all

_____

[3] The doctrine of equitable estoppel "addresses conduct by the defendant that prevents the plaintiff from suing within the statutory period." *Williams*, 390 F.3d at 959.

until ninety days before his deadline, so the lockdown-free days prior to the summer of 2006 did not afford Strong any library time. Moreover, Strong's filing of his petition on January 4, 2007, only sixty-nine days after Menard library protocol first would have allowed him library access and twenty-one days before he believed his petition was due, demonstrates that he was, in fact, diligent in preparing his petition.[4] Strong is not on death row and as such, his interests are not served by anything other than diligence, which he has sufficiently demonstrated to the Court.

For these reasons, under either § 2244(d)(1)(B) or principles of equitable estoppel or tolling, Strong's petition is not time-barred.

### Motion to Stay

The Court's order of April 30, 2007 stated that if Strong were to file an amendment to his petition, adding federal constitutional claims arising from the new evidence he said he had obtained, the Court would be required to stay his petition until he had exhausted state court remedies on his new claims. Because Strong has now done so, the Court will stay further proceedings.

Federal district courts may not adjudicate mixed petitions for habeas corpus containing both unexhausted and exhausted claims. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). For many years, federal courts dismissed such petitions without prejudice under *Rose*, but the introduction of the one-year statute of limitations under AEDPA made such dismissals effectively final. *See Rhines v. Weber*, 544 U.S. 269, 275 (2005). Because the filing of a federal habeas petition does not toll the statute of limitations, *Duncan v. Walker*,

---

[4] Strong's statement that even if he had known the statute of limitations, lockdowns and mail delays would have prevented him from filing his petition on time does not bolster Hulick's case; the fact that additional prison conditions made filing Strong's petition in a timely fashion even less possible only strengthens Strong's argument.

533 U.S. 167, 181–82 (2001), a petitioner returning to state court to pursue unexhausted claims contained in a mixed petition is unlikely to be able to do so and return to federal court before the statute of limitations runs. *See Rhines*, 544 U.S. at 275.

Furthermore, the barriers to filing a second habeas corpus petition, which requires advance approval from the Seventh Circuit, are high. *See* 28 U.S.C. § 2244(b)(2) (a claim in a successive habeas application under § 2254 will be dismissed unless it "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or . . . the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and . . . the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense").

Under certain circumstances, a federal district court "has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Rhines,* 544 U.S. at 271–72. In fact, it may be considered an abuse of discretion for a district court to refuse to grant a stay "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

Strong appears to have had good cause for his failure to exhaust. In his amended habeas petition, Strong contends that he failed to exhaust his new claims because they are based on new evidence generated from investigations conducted within the past year or so. Motion for Leave to File an Amended Petition (docket no. 13) at 6. Among other things, the police did not

discover the identity of the victim in Strong's case until February 2006.  Although Strong has not clearly articulated the link between this new information and the constitutional claims he believes arise from it, to the extent the amended claims are based on this new evidence, he should have a reasonable opportunity to pursue them in state court before the Court decides his amended habeas petition.  Furthermore, Strong's claims are not clearly meritless, and there is no indication that he is bringing them to delay litigation intentionally.  As discussed earlier, the strictly limited library access at Menard, the prison's frequent, prolonged lockdowns, and the extended mail delays have all slowed his progress.

The Court will not stay proceedings on Strong's petition indefinitely, however.  The Supreme Court has advised that a district court should "place reasonable time limits on a petitioner's trip to state court and back."  *Rhines*, 544 U.S. at 278.  Unless Strong files his intended petition for post-conviction relief in state court within sixty days after the entry of this order, the Court will lift the stay.  If Strong files the intended petition in a timely fashion but fails to prosecute it diligently, the Court reserves the right to lift the stay in the future.

## CONCLUSION

For the foregoing reasons, the Court grants Strong's motion to stay habeas proceedings for a limited time [docket no. 3] and declines to dismiss his petition.  Both parties are directed to file written status reports by no later than March 31, 2008, stating whether Strong has filed a petition for post-conviction relief in state court, and if so, identifying the petition by its docket number.

MATTHEW F. KENNELLY
United States District Judge

Date: January 18, 2008

16